598 A.2d 1017

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth H. WHEATON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 1, 1991.

Filed Nov. 4, 1991.

Kenneth H. Wheaton, pro se.

James E. Carlson, Dist. Atty., Wellsboro, for the Com., appellee.

Before MONTEMURO, KELLY and HOFFMAN, JJ.

KELLY, Judge:

In this Opinion, we are called upon to determine whether appellant's conduct constituted harassment when he, with the reasonable belief that his water services were going to be terminated, threatened legal action against excavators working on a water line adjacent to his property as well as against two of the three trustees of the Water Association.

624

We find that the Commonwealth failed to prove beyond a reasonable doubt that (1) appellant acted with the intent to harass, annoy or alarm and (2) appellant's conduct served no legitimate purpose. *See* 18 Pa.C.S.A. § 2709(3). Hence, we vacate the judgment of sentence and discharge appellant.

The facts and procedural history may be summarized as follows. Appellant, Kenneth H. Wheaton, is a homeowner who receives his water supply from the Potter Brook Water Association ["Water Association"], an unincorporated association. Appellant and the Water Association were disputing over an unpaid bill of $50.00. Appellant did not pay the bill because he believed that it was not for repairs but for the installation of a water tank, which appellant strongly opposed.

On April 20, 1989, appellant approached Mr. David Cady, Sr., who was locating a water line on the property adjacent to appellant's property. Appellant threatened to have Mr. Cady arrested if he touched appellant's water line. Appellant spoke with Mr. Cady for ten to fifteen minutes and then left. Mr. Cady continued to work and completed his job. On April 22, 1989, Mr. Michael Ackley was excavating the water line at the same spot. Appellant approached Mr. Ackley and informed him that he would be sued if he touched appellant's line. Appellant continued talking for five minutes and then returned home. Twenty minutes later, Mr. Ackley left to avoid any possible conflict.

Appellant also contacted two Water Association trustees with respect to his water service. On or about April 20, 1989, appellant went to Mr. Clifford Tubbs' barber shop and told Mr. Tubbs that he would be sued if the Water Association shut off appellant's water. Mr. Tubbs was one of the three trustees of the Water Association, and his barber shop served as a meeting place for the Water Association. Appellant remained at the barber shop for three minutes. There were customers in the barber shop who overheard appellant's statements. Mr. Tubbs claimed one of these customers has never returned. On two occasions, appellant

also visited the home of Mr. John Bingman, another trustee. Both times appellant was invited into Mr. Bingman's home. Appellant stated that he hoped Mr. Bingman was prepared for what may happen. Although appellant was not more specific, Mr. Bingman knew that appellant was discussing the termination of his water service. This disturbed both Mr. and Mrs. Bingman.

 Appellant was initially found guilty of harassment by the district court. On *de novo* appeal to the Court of Common Pleas of Tioga County, appellant was again found guilty after a hearing before the Honorable Robert M. Kemp, P.J. Appellant's post-trial motions were denied without a hearing on January 8, 1991, and appellant filed an appeal *pro se* to this Court.

I. SHOULD THE TRIAL JUDGE HAVE HELD A HEARING ON APPELLANT'S REQUEST FOR RE-CUSAL AND ON HIS POST–TRIAL MOTIONS AND SHOULD THE LOWER COURT HAVE GRANTED APPELLANT'S POST–TRIAL MOTIONS?

II. SHOULD THE TRIAL JUDGE HAVE IMPOSED A GREATER SENTENCE THAN THE DISTRICT J[U]S-TICE AND SHOULD CONDITIONS OF PROBATION BE GIVEN?

Appellant's Brief at 7.[1]

Appellant contends that the Commonwealth has failed to adduce sufficient evidence that he committed the offense of harassment. Appellant asserts that the Commonwealth failed to prove beyond a reasonable doubt that (1) appellant possessed the necessary intent to harass, annoy or alarm

1. Appellant's first issue generally opposed the trial court's denial of post-trial motions. One of appellant's post-trial motions specifically challenged the sufficiency of the evidence. We note that while appellant's statement of questions involved does not adhere in strict compliance with Pa.R.A.P. 2116(a), the sufficiency question has been raised in and answered by the trial court and adequately addressed in appellant's brief. In light of appellant's *pro se* representation, this Court declines to impose the penalties listed for non-compliance in Pa.R.A.P. 2101 and will reach the merits.

and (2) appellant's conduct served no legitimate purpose. For the reason which follows, we agree.

Initially, we note that in reviewing claims to the sufficiency of the evidence to support a conviction, this Court must view all the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Pearsall*, 368 Pa.Super. 327, 329, 534 A.2d 106, 107 (1987). The Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. *Id.*

■ The offense of harassment is defined by 18 Pa. C.S.A. § 2709 which provides that:

A person commits a summary offense when, with intent to harass, annoy or alarm another person:

(1) he strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same; or

(2) he follows a person in or about a public place or places; or

(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

18 Pa.C.S.A. § 2709. Specifically, section 2709(3) requires that one (1) with intent to harass, annoy or alarm another person (2) engages in a course of conduct or repeatedly commits acts (3) which alarm or seriously annoy such other person and (4) which serves no legitimate purpose.[2] While the term "legitimate purpose" has not been clearly defined,[3]

---

**2.** A review of the record reveals that the complaint also stated appellant violated 18 Pa.C.S.A. § 2709(1). Because the Commonwealth produced *no* evidence of physical force, attempted or threatened, this section is inapplicable as a basis for the harassment conviction.

**3.** A trial court has tried to define the extent of "legitimate communication" for the harassment by communication statute, 18 Pa.C.S.A. § 5504. *Commonwealth v. Bare*, 1 D. & C.4th 480 (1988). They defined "legitimate communication" as "communication that is justified in the sense that its purpose conforms to recognized and accepted standards of good conduct and decency and in that sense is otherwise lawful." *Id.* at 483. However, even this "plainly excludes many calls that are intended to annoy the victim and have precisely that effect."

the comments to the Model Penal Code[4] state that "[t]he import of the phrase, however, is broadly to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor. This element of the residual offense should limit its application to unarguably reprehensible instances of intentional imposition on another." Model Penal Code, section 250.4, comment 5, p. 368 (1980 edition).

In a prior case, this Court held that filing a series of formal complaints and making phone calls during business hours with government agencies did not constitute harassment. *Commonwealth v. Bender*, 248 Pa.Super. 504, 375 A.2d 354 (1977). In *Bender*, appellant filed numerous complaints against two police officers because he believed they had mishandled his gun permit application.[5] The Court held that given the "attendant circumstances and the ostensibly lawful and constitutionally protected nature[6] of appellant's acts, the trier of fact could only speculate that appellant intended to harass the two police officers and that his

*Id. quoting* Model Penal Code, section 250.4, comment 2, p. 362 (1980 edition).

**4.** The Model Penal Code § 250.4, HARASSMENT provides:
A person commits a petty misdemeanor if, with purpose to harass another, he:
(1) makes a telephone call without purpose of legitimate communication; or
(2) insults, taunts or challenges another in a manner likely to provoke violent or disorderly response; or
(3) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language; or
(4) subjects another to an offensive touching; or
(5) engages in any other course of alarming conduct serving no legitimate purpose of the actor.

**5.** Appellant believed that the officers had invented a theft charge because they didn't like his attitude.

**6.** Appellant's action is ostensibly protected by both the United States and Pennsylvania Constitutions which guarantee citizens the right to petition the government for redress of grievances and to speak freely. *See Commonwealth v. Bender, supra,* 375 A.2d at 359.

628

conduct served no legitimate purpose.[7] *Commonwealth v. Bender, supra,* 375 A.2d at 359 (footnotes added).

Instantly, appellant believed, not completely without merit, that the Water Association was terminating his water service.[8] Unlike the government agencies in *Bender,* the Water Association has no permanent office. Its governance consists of three trustees. In addressing his concerns, appellant visited two trustees and informed them that they would be sued if appellant's water was turned off. Additionally, appellant threatened to sue Mr. Cady and Mr. Ackley who were exposing and excavating a water line near appellant's home. All of these people had some control over whether or not appellant's water service would be terminated. Certainly, appellant's interest and efforts in maintaining the basic services to his home are a legitimate purpose.

Additionally, the Commonwealth had the burden to prove appellant had the *intent* to harass, annoy or alarm. Anything less than a showing of *intent* is insufficient. *Commonwealth v. Showalter,* 275 Pa.Super. 1, 4, 418 A.2d 580, 582 (1980). As in *Bender,* we should be cautious in making

7. The following are examples of conduct held to constitute harassment under 18 Pa.C.S.A. § 2709(3): *Commonwealth v. Tedesco,* 379 Pa.Super. 567, 550 A.2d 796 (1988) (repeated incidents of racial and ethnic slurs directed at victim); *Commonwealth v. Evans,* 299 Pa.Super. 529, 445 A.2d 1255 (1982) (following victim and addressing obscene notes, letters, and words over an intercom to victim); *Commonwealth v. Duncan,* 239 Pa.Super. 539, 363 A.2d 803 (1976) (plurality) (waking a co-ed napping in a dormitory lounge with continued entreaties for cunnilingus). The comments to the Model Penal Code cite as examples: "burning a cross on the lawn of a black family, ... leaving animal carcasses on a neighbor's stoop, or ... shining a spotlight into a parked car in order to embarrass or frighten the occupants thereof." Model Penal Code, section 250.4, comment 5, p. 368 (1980 edition).

8. Appellant's water supply could be terminated if the Water Association installed a shut off valve on the water line which was in the ground of the property, adjacent to appellant's property, on which Mr. Cady and Mr. Ackley were working. N.T. 10/24/89 at 23 and 24. Testimony revealed that the Water Association planned to install such a valve as well as repair a water leak when it employed Mr. Cady and Mr. Ackley to excavate the Kolesar property. *Id.* at 21, 23 and 24.

our finding that a criminal intent can be inferred from making complaints.

The evidence supports the assertion that appellant's intention was to prevent the Water Association from turning off his water. Appellant threatened legal action against two men who were digging up the water line near appellant's home. Appellant threatened to have Mr. Cady arrested if he touched appellant's water line. N.T. 10/24/89 at 19. Appellant later approached Mr. Ackley and "want[ed] to know if [he] had good insurance because if [he] touched appellant's line, that [appellant] was going to sue [him]." *Id.* at 22. He also threatened to sue two of the three trustees of the Water Association. Appellant told Mr. Tubbs that "if you proceed to listen to this man, you are all going to be sued," *Id.* at 24, and told Mr. Bingman, "I hope you're prepared for what may happen." *Id.* at 30. Appellant's comments were made to retain his water service without having the specific intent to harass. Although appellant may have been negligent or irresponsible with respect to the effect of his conduct, this is insufficient. We add that while we find appellant's behavior does not constitute harassment, we do not condone his outbursts.[9]

Therefore, reviewing the evidence in the light most favorable to the Commonwealth, we find the evidence was insufficient to convict appellant for harassment. Accordingly, we vacate the judgment of sentence and discharge appellant.[10]

9. Appellant should attempt to voice his complaints with the Water Association in a more amicable, and hopefully more effective, manner, such as filing a formal complaint with the Water Association for an explanation of any disputes he may have concerning his bill.

10. Due to our disposition, appellant's remaining issues will not be addressed.