J.A02038/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JANET MARIE COOPER, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1438 MDA 2015 |

Appeal from the Judgment of Sentence July 27, 2015
in the Court of Common Pleas of Berks County Criminal Division
at No(s): CP-06-SA-0000161-2015

BEFORE: PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:               **FILED MARCH 17, 2016**

Appellant, Janet Marie Cooper, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas following her summary criminal conviction for harassment.[1]  Appellant argues that the evidence was insufficient to support her conviction and we agree.  We reverse.

We glean the pertinent facts and procedural history from the trial court's opinion and the certified record.  The incident underlying this appeal occurred on October 9, 2014.  At that time, Appellant was employed by the Reading School District as a teacher's aide at the Tyson-Schoener Elementary School.  Appellant had been working for the Reading School

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2709(a)(1).

District for approximately nineteen years, as both an education assistant and a parent coordinator. On the date in question, Appellant was supervising a group of eight special needs students at recess on an outdoor playground. Appellant was standing next to a sliding board supervising several students, including the particular student at issue here, an eight-year-old boy with autism ("D.M."). Several of the students were proceeding down the slide head-first. In the interest of safety, Appellant instructed them to only use the slide in a sitting position.

After being corrected, D.M. approached the slide and proceeded down in a sitting position. However, as he was coming down the slide, he hit Appellant in the face with an open hand, jarring Appellant's glasses and causing some injury to her face. Appellant's hand then came in contact with D.M.'s face, causing him to exclaim, "ow, my ear," once he reached the bottom of the slide. The entire incident took five to ten seconds. On October 10, 2014, the Reading Police Department issued a citation to Appellant for the summary offense of harassment.

A Magisterial District hearing was conducted on April 8, 2015. At the hearing, Noelle Miller, an employee of Pennsylvania Counseling Services, testified. Miller was specifically working with D.M. as a behavioral aide approximately twenty-five to thirty hours per week in school and five hours per week at home. Miller explained that she was standing at the bottom of the sliding board. She saw Appellant instruct the children to use the slide

properly. She also saw Appellant place her arm across the slide to stop the children from going down head-first, but remove her arm once the children were in a sitting position. N.T., 4/8/15, at 18. Miller opined that D.M. was becoming upset by Appellant's correction and therefore hit Appellant. *Id.* at 20. She also stated that she thereafter saw that Appellant "reached over then and hit him back as he was going down the slide." *Id.* at 21.

However, Miller admitted that she did not know what Appellant's reaction was to D.M.'s strike:

> I'm not sure [about Appellant's reaction], my focus was mainly on [D.M.], and that kind of thing. I can't—I wasn't inside her head to know what her exact reaction was.

*Id.* Further, Miller acknowledged that she did not actually see the contact between Appellant and D.M.:

> Q. Did you see [Appellant] connect with his ear?
>
> A. No, my focus was after this all occurred just making sure that I handled it the way the PCS requires me to handle them.

*Id.* at 22-23. In addition, on redirect examination, Miller could not provide any further description of Appellant's positioning after D.M. struck her:

> Q. So when [D.M.] was coming down the slide and he hit [Appellant], he kept going?
>
> A. Yes.
>
> Q. And when she hit him which hand did she use?
>
> A. Her right hand.

Q. Did she need to turn to do that to hit him or did she stay in the same position?

A. Standing she could stay in the same position so that as he was going down it was her right hand that would reach him.

Q. Okay, did you see her move her body, not what happened to her head, but her body after he hit her? Did she turn in his direction or away from him, or some other way?

A. You know what, I don't remember.

*Id.* at 35.

Appellant also testified at the hearing. She claimed that any contact she had with D.M., after he struck her on the slide, was accidental:

Q. Okay, and when [D.M.] came down on the slide on his bottom what happened?

A. He came down and he punched me in my eye, in my left eye, I flew back and then I flew forward, and the side of my face hit the side of the slide, hit the side of the slide, but my hands connected with him as he went down the sliding board.

Q. Okay, and when you say your hands connected with him as he went down the sliding board was that-how long was that after you were struck?

A. After-less than a couple of seconds. After I hit the side of the sliding board my hand went up in the air.

Q. So almost immediately?

A. Yes.

*Id.* at 64-65.

Regarding her intent, Appellant testified as follows:

Q. Okay, and did you intend to strike [D.M.]?

A. No.

Q. Did you have any ill will toward [D.M.]?

A. No.

Q. Did you have any anger with [D.M.]?

A. No.

Q. Did you always have a good relationship with [D.M.]?

A. Yes.

*Id.*

The Magisterial District Court found Appellant guilty of harassment. However, regarding Appellant's intent the court stated:

> I'm not sure this is going to be one for the Appeals Court as to what they feel happened with the intent, the intentional act that's the one piece that was missing in this whole thing, the intentional act and I didn't—I know it's in there, but I didn't see it, but you can take this up to the Appeals Court.

*Id.* at 80.

On April 8, 2015, the Magisterial District Court sentenced Appellant to pay a fine of three hundred dollars, plus court costs. Appellant filed a timely appeal to the Berks County Court of Common Pleas. The matter was scheduled for a *de novo* trial on July 9, 2015. However, by agreement of the parties, the transcript of the Magisterial District Court hearing was the only submitted evidence. After the trial court had an opportunity to review the transcript, the court affirmed Appellant's harassment conviction on July 10,

2015. Shortly thereafter, on July 27, 2015, the court also sentenced Appellant to pay a fine of three hundred dollars, plus court costs.

The instant appeal followed. Appellant filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a Pa.R.A.P. 1925(a) opinion. The trial court specifically determined that Miller's testimony, as set forth in the transcript of the Magisterial District Court hearing, was credible, while Appellant's explanation of the incident was not credible.[2] Trial Court's Rule 1925(a) Op. at 4-5.

Appellant raises a single issue for our review:

> Whether the evidence of record was insufficient to sustain the trial court's guilty verdict on the summary offense of Harassment under [18 Pa.C.S. § 2709(a)(1)], on the basis that the Commonwealth failed to prove beyond a reasonable doubt that the Appellant struck, shoved, kicked or otherwise subjected the minor child to physical contact with the intent to annoy, harass or alarm him?

Appellant's Brief at 5.

While Appellant does not dispute that her hand contacted D.M., she argues that the evidence presented was insufficient to establish that she had the requisite *mens rea* necessary for a harassment conviction pursuant to 18 Pa.C.S. § 2709(a)(1). Specifically, Appellant claims that the evidence did

---

[2] We note that because the only evidence considered was the transcript of the Magisterial District Court Hearing, the trial court's credibility determinations were based exclusively upon the cold record.

- 6 -

not prove that she had the intent to "annoy, harass or alarm" D.M. We are constrained to agree.

We begin by noting that "[o]ur standard of review from an appeal of a summary conviction heard *de novo* by the trial court is limited to a determination of whether an error of law has been committed and whether the findings of fact are supported by competent evidence." **Commonwealth v. Reigel**, 75 A.3d 1284, 1286-87 (Pa. Super. 2013) (*en banc*) (citation omitted). Further, the trial court's adjudication will not be disturbed absent a manifest abuse of discretion. **Id.**

Also pertinent to the instant analysis is our standard of review regarding a sufficiency of the evidence claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Vargas***, 108 A.3d 858, 867-68 (Pa. Super. 2014) (citations omitted). We specifically note that when the evidence presented is insufficient to support a conviction, the proper remedy at law is an arrest of judgment not a new trial. ***Commonwealth v. Vogel***, 461 A.2d 604, 607 (Pa. 1983).

Further, "[a] person commits the crime of harassment when, **with intent to harass, annoy or alarm another, the person**: . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S. § 2709(a)(1) (emphasis added).

In order to meet its burden of proof under this section, the Commonwealth must "prove [the] appellant had the **intent** to harass, annoy or alarm." ***Commonwealth v. Wheaton***, 598 A.2d 1017, 1020 (Pa. Super. 1991). "Anything less than a showing of **intent** is insufficient." ***Id.*** (citation omitted); ***accord Commonwealth v. Battaglia***, 725 A.2d 192, 194 (Pa. Super. 1999) (holding that the evidence was insufficient to support the petitioner's harassment conviction pursuant to 18 Pa.C.S. § 2709(a)(1) where the context of the petitioner's offensive comments and language "was responsive, not provocative" and thus the petitioner did not have the requisite intent required for conviction under the statute). "An intent to harass may be inferred from the totality of the circumstances."

*Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted).

In the case *sub judice*, we conclude that the Commonwealth did not meet its burden regarding Appellant's intent. Appellant, a long-term employee of the Reading School District, contends that she inadvertently struck D.M., due to the physical reaction she experienced as a result of the blow to the face she received. As the trial court concluded, Miller was able to testify definitively that Appellant did strike D.M. with her hand. Appellant does not deny that this contact occurred. However, the trial court relied exclusively on the testimony of Miller to infer that Appellant intended to alarm D.M. when she struck him. Trial Court Op., at 4-5. Miller was unable to attribute such intent to Appellant. Indeed, she specifically declined to do so stating, "I wasn't inside her head to know what her reaction was." N.T. at 21. Further, Miller offered no other indicia of Appellant's state of mind at the time of the incident, noting that her focus was on D.M., not Appellant. *Id.* at 35.

Accordingly, even when viewing all the evidence in the light most favorable to the Commonwealth as the verdict winner, *See Vargas*, 108 A.3d at 867, we are constrained to hold that the evidence was insufficient to establish that Appellant intended to "harass, annoy or alarm" D.M. as required under 18 Pa.C.S. § 2709(a)(1). *See Battaglia*, 725 A.2d at 194. Thus, we hold that the evidence was insufficient to sustain Appellant's

summary conviction of harassment and we reverse her judgment of sentence.

Judgment of sentence reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2016