J-A04027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| ISAAC DOUGBA, | | |
| Appellant | | No. 2063 EDA 2016 |

Appeal from the Judgment of Sentence June 6, 2016
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-SA-0000793-2015

BEFORE:  SHOGAN, J., SOLANO, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 13, 2017**

Appellant, Isaac Dougba, appeals from the judgment of sentence imposed following his bench conviction of the summary offense of harassment.[1]  We affirm on the basis of the trial court's opinion.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, 8/18/16, at 1-2).  Therefore, we have no reason to restate them at length here.

For the convenience of the reader, we note briefly that a magisterial district judge found Appellant guilty of harassment on August 5, 2015.  He filed a summary appeal to the Delaware County Court of Common Pleas on

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2709(a)(2).

September 1, 2015. On April 12, 2016, the court held a summary appeal trial, and took the matter under advisement. On June 6, 2016, it found Appellant guilty, and sentenced him to pay a fine of $50.00 plus court costs. Appellant timely appealed, and filed a timely concise statement of errors complained of on appeal on July 28, 2016. *See* Pa.R.A.P. 1925(b).[2] The court entered an opinion on August 18, 2016. *See* Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Did the trial court commit reversible error in finding [A]ppellant guilty beyond a reasonable doubt of Harassment (18 Pa.C.S.[A. §] 2709(a)(2)) despite not only insufficient evidence as a matter of law that the [A]ppellant had the criminal intent to "harass, annoy, or alarm" the complainant but also despite insufficient evidence as a matter of law that the [A]ppellant "followed" the complainant?

2. Did the trial court commit reversible error in finding [A]ppellant guilty beyond a reasonable doubt by failing to give proper weight and consideration to unrebutted evidence of his excellent reputation for being honest, law-abiding, and non-violent following the non-incriminating testimony of the Commonwealth's sole witness?

(Appellant's Brief, at 4).

_____

[2] Appellant's two and one-half page Rule 1925(b) statement is non-compliant. It includes inappropriate argument, excerpts of trial testimony, and discussion of case law, and it fails to coherently state the two appellate issues listed *infra*, in violation of Rule 1925. *See* Pa.R.A.P. 1925(b)(4)(ii), (iv) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge[.] . . . The Statement should not be redundant or provide lengthy explanations as to any error."); (*see also* Rule 1925(b) Statement, 7/28/16, at unnumbered pages 1-3). Although we could find Appellant's issues waived on this basis, we decline to do so, in the interest of judicial economy. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not . . . raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Although aptly set forth by the trial court in its opinion, we emphasize our standards of review for sufficiency and weight claims, respectively:

> The standard we apply in reviewing the sufficiency of the evidence is whether **viewing all the evidence admitted at trial in the light most favorable to the verdict winner**, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. **In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder**. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Tucker***, 143 A.3d 955, 964 (Pa. Super. 2016), *appeal denied*, 165 A.3d 895 (Pa. 2017) (citation omitted; emphasis added).

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the . . . verdict did not shock one's conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not

reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Diaz*, 152 A.3d 1040, 1046 (Pa. Super. 2016), *appeal denied*, 2017 WL 2264119 (Pa. May 23, 2017) (citations and quotation marks omitted).[3]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court's opinion properly disposes of the questions presented. (*See* Trial Ct. Op., at 4–8) (determining: (1) evidence was sufficient and adequate to support conviction and elements of harassment were met; (2) Appellant followed S.H. in public with intent to harass, annoy, or alarm her, where record reflects that, as S.H. ignored Appellant and moved away from him on the sidewalk, he: continued to beep his horn and motion towards her; moved inside his truck as if to grab her; and drove by her home; and (3) S.H.'s version of events was credible, Appellant's character witness was unpersuasive, and Appellant's individual actions towards the thirteen-year-old girl cannot be viewed in a vacuum). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judge Shogan joins the Memorandum.

---

[3] With respect to Appellant's weight claim, we note that "a defendant in a summary appeal case is not permitted to file post-sentence motions." *Commonwealth v. Dixon*, 66 A.3d 794, 797 (Pa. Super. 2013) (citing Pa.R.Crim.P. 720(D)); *see also* Pa.R.Crim.P. 607(A)(3).

Judge Solano files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/13/2017</u>

IN THE COURT OF COMMON PLEAS,
DELAWARE COUNTY, PENNSYLVANIA

SUMMARY APPEALS

COMMONWEALTH OF PENNSYLVANIA      :      SA No. 793-2015

v.      :

ISAAC DOUGBA

Stavroula Kotrotsios, Esquire – Attorney for the Commonwealth/Appellee
Michael Coard, Esquire – Attorney for Defendant/Appellant

**DURHAM, J.**                                   **DATE: 08/17/16**

## <u>OPINION</u>

Defendant/Appellant Isaac Dougba (Mr. Dougba) seeks review of the Trial Court's June 6, 2016 Order wherein the Trial Court found Mr. Dougba guilty of Harassment, 18 Pa. C.S.A. §2709(a)(2), and imposed a $50.00 fine and court costs. On July 5, 2016, Mr. Dougba filed his Notice of Appeal. On July 7, 2016, the Trial Court, pursuant to Pa. R.A.P. 1925(b), ordered Mr. Dougba to file his Concise Statement of Matters Complained of on Appeal. Mr. Dougba filed the aforementioned Statement on July 28, 2016.

### <u>Factual and Procedural History</u>

On July 9, 2015 at 2:50PM, ▮▮▮▮▮▮ (Ms. ▮▮▮▮) was in the area of Summit Street and Main Street in Darby, Delaware County, Pennsylvania. (Notes of Testimony, "N.T." 04/12/16 at 4). While standing on the sidewalk to wait for her grandmother, Ms. ▮▮▮▮ saw Mr. Dougba inside a parked white truck with red and green graffiti on it. *Id.* at 4-5. Mr. Dougba's truck was parked two to three feet away from Ms. ▮▮▮▮ as she stood on the sidewalk. *Id.* at 6. Ms. ▮▮▮▮ testified that Mr.

1



Dougba tried to get her attention by beeping the horn, but she initially ignored him. *Id.* at 5. Ms. ████ further testified that Mr. Dougba kept beeping the horn and made a forward movement with his hand motioning her to come over to his truck. *Id.* at 5-6. Ms. Dougba did not speak to Ms. ████ *Id.* at 10. Ms. ████ testified that no one else was around the area when these events occurred. *Id.* at 6. Ms. ████ testified that she felt scared by Mr. Dougba's acts. *Id.* at 6.

Ms. ████ testified that she, then, began "speed walking" on Summit Street. *Id.* at 7. Mr. Dougba began to drive the truck. *Id.* at 7. Ms. ████ further testified that as she walked away, she saw Mr. Dougba turn his back around inside the truck as if to get out of the truck and grab her. *Id.* at 7. At this time, Ms. ████ called her mother on the phone. *Id.* at 6-7. Ms. ████ testified that when she reached Main Street, she walked left and Mr. Dougba's truck turned right. *Id.* at 8. Ms. ████ further testified that while running home, she saw Mr. Dougba's truck again when it drove passed the gas station. *Id.* at 8-9. Ms. ████ testified that the gas station is across the street from her home. *Id.* Ms. ████ met with the police officers at her home and told them what had occurred. *Id.* at 9. Ms. ████ testified that she saw Mr. Dougba again toward the post office when she was coming down the block and called the police again. *Id.* Ms. ████ further testified that she was terrified. *Id.*

Folomy Kamara testified on behalf of Mr. Dougba, testified that people know Mr. Dougba's reputation as being honest, law-abiding and non-violent, and that Mr. Dougba's reputation is excellent. A non-jury trial was held in this matter on April 12, 2016. The Trial Court found Mr. Dougba guilty of Harassment and imposed a $50.00 fine and court costs. Mr. Dougba's appeal followed.

**Issues Asserted on Appeal**

Mr. Dougba asserts the following issues on appeal:

2

At the April 12, 2016 trial, the complainant merely testified that the defendant/appellant "tried to get my attention by beeping," that "he was flagging me toward him," that "he **didn't get out of the car**," that he **didn't do anything**," and that "he **didn't say anything**." **(emphasis in original)**.

Such testimony, i.e., such ostensible evidence, is woefully insufficient and inadequate as a matter of law to prove anything beyond a reasonable doubt. And that unequivocally applies to the charge of Harassment as defined in 18 Pa. C.S. 2709(a)(2), which requires much more. It actually requires that a defendant first and foremost have the mens rea or criminal "intent." But "beeping and flagging" – especially since the defendant/appellant herein "didn't get out of the car," "didn't do anything," and "didn't say anything" – is not proof of means [sic] rea or criminal intent.

In addition, such intent, pursuant to the statute, must be to "harass" (which means to torment or worry by repeated conduct) or to "annoy" (which means to both by repeated action), or to "alarm" (which means to intentionally make suddenly afraid). By the way, the Commonwealth missed the point completely in arguing that the complainant was "afraid." Whether or not she was afraid and, if so, of exactly what, is wholly irrelevant to Section 2709. That statute is not at all concerned about whether a complainant was afraid but is exclusively concerned about whether a defendant had the requisite mens rea or criminal intent to make a complainant afraid. It must be noted that his supposed "beeping and flagging" could reasonably have been an attempt to get directions or to ask a harmless question or for some other non-criminal response – keeping in mind there were absolutely no allegations of sexual gestures or sexual comments, assaultive gestures or assaultive comments, or threatening gestures or threatening comments.

This is precisely why defense counsel at trial cited and provided to the court a copy of Commonwealth v. Wheaton, 598 A.2d 1017 (Pa. Super. 1991), which held "the Commonwealth had the burden to prove (beyond a reasonable doubt) appellant had the intent to harass, annoy or alarm. *' Anything less' than a showing of intent is insufficient.'" (emphasis in original)* (citing Commonwealth v. Showalter, 418 A.2d 580 (Pa. Super. 1982)).

Moreover, Section 2709(a)(2) requires that, along with a defendant having criminal intent, he also "follows" a complainant. But "follows" does not merely mean going in the same direction behind someone; it instead means "to pursue or to chase" for a criminal purpose. Such malicious behavior was not even alleged in this case.

Wheaton, supra, also pointed that a harassment "offense should limit its application to 'unarguably reprehensible' instances of intentional imposition on another." In fact, although not an exhaustive list of what legally constitutes harassment, the Wheaton Court gives examples of instances such as sexual gestures, touching, threatening, epithets, slurs, damaging property, etc. Nothing of the sort or similar was even alleged in the case at bar.

3

Furthermore, the defendant/appellant in the instant case presented not just evidence of his good reputation for being honest, law-abiding, and non-violent but unrebutted evidence of such. <u>Commonwealth v. Neely</u>, 561 A.2d 1 (Pa. 1989) makes it crystal clear that good reputation evidence, by itself, can raise a reasonable doubt.

The Commonwealth's insufficient and inadequate evidence as a matter of law and the defendant/appellant's unrebutted good reputation evidence mandated a not guilty verdict.

## Discussion

### The evidence was sufficient and adequate to find Mr. Dougba guilty of Harassment, 18 Pa. C.S.A. §2709(a)(2) beyond a reasonable doubt.

When reviewing a claim of sufficiency of the evidence, the Appellate Court must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. *Com. v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002). It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the fact finder. *Id.* at 960. It is the function of the jury to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal. *Id.* at 960-961.

The weight of the evidence is exclusively for the finder of fact, which is free to believe, all, part, or none of the evidence, and to assess the credibility of the witnesses. *Com. v. Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006). An appellate court is restrained from substituting its judgment for that of the finder of fact. *Id.* Thus, an appellate court may reverse a decision of the trial court only where the defendant has shown that the fact-finder overlooked such a preponderance of the evidence so that the verdict shocks the conscience. *Id.*

The crime of harassment is defined as follows: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: ... (2)

4

follows the other person in or about a public place or places...." 18 Pa. C.S.A. §2709(a)(2). An intent to harass may be inferred from the totality of the circumstances. *Lutes, supra* at 961.

Section 2709 of the Crimes Code does not define the terms of "annoy" or "alarm." When the terms of statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. 1 Pa. C.S.A. §1921(b). This means ascribing to the particular words and phrases the definitions which they have acquired through their common and approved usage. 1 Pa. C.S.A. §1903. "As the legislature did not define this term, its common and approved usage may be ascertained by examining its dictionary definition." *Com. v. Kelley*, 801 A.2d 551, 555 (Pa. 2002).

Webster's Dictionary defines "annoy" as "to cause someone to feel slightly angry" or "to disturb or irritate." *See* Merriam-Webster, http://www.merriam-webster.com/dictionary/annoy (last visited on 8/10/16). "Alarm" is defined as "to strike with fear" or to "disturb" or "excite." *Id.*

The Trial Court found Ms. ████ to be credible. As for Mr. Dougba's character witness, the Trial Court did not find such testimony to be persuasive. The evidence as to whether Ms. ████ was annoyed or alarmed by Mr. Dougba's acts is certainly relevant in this matter. The Trial Court is permitted to evaluate the totality of the circumstances to determine whether Mr. Dougba intended to harass Ms. ████. *Lutes, supra.*

Ms. ████ credibly testified that as she stood alone on the sidewalk a few feet away from Mr. Dougba's truck, Mr. Dougba repeatedly beeped his horn and motioned for her to come over to him. (N.T. 04/12/16 at 5-6, 9). The evidence is undisputed that Ms. ████ was "scared" and "terrified." *Id.* at 6, 9. In response, Ms. ████ began

5

to "speed walk" down Summit Street and called her mother. *Id.* at 6-7. While getting away, Ms. ████ saw Mr. Dougba make a movement inside his truck as if he was getting out of the truck to grab her. *Id.* at 7-8. After turning left onto Main Street, Ms. ████ ran home and saw Mr. Dougba driving pass the gas station across the street from her home. *Id.* at 8-9. After meeting with the police, Ms. ████ saw Mr. Dougba again driving toward the post office as she was walking down the street. *Id.* at 9.

Ms. ████ immediate reaction was to get away from Mr. Dougba. Mr. Dougba's actions cannot be viewed in a vacuum to determine what his intent was at the time. It is clear that Mr. Dougba continued to act despite Ms. ████ negative reactions, and therefore, showed his intent to annoy or alarm her. Regarding defense counsel's suggested innocuous reasons as to why he acted in such a manner, those are facts that are not in evidence, and therefore, were not for the Trial Court's consideration.

Defense Counsel heavily relies on *Com. v. Wheaton*, 598 A.2d 1017 (Pa. Super. 1991) in support of his argument as to intent. The facts in *Wheaton, supra* are factually distinct from the facts in this matter, and therefore, is not controlling. In *Wheaton, supra*, the Superior Court held that evidence established that the defendant's complaints about his belief that the water association intended to shut off his water and his threats to sue the association's member served a "legitimate purpose" and were not made with intent to harass, and therefore, the evidence was insufficient to support the defendant's conviction. *Id.* at 629.

The defendant, in *Wheaton, supra*, was charged and convicted of 18 Pa. C.S.A. §2709(a)(3). *Id.* at 624. Section 2709(a)(3) provides that a person commits a summary offense when, with intent to harass, annoy or alarm another person: "... he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." The defendant and the water

6

association were disputing over an unpaid bill of $50.00. *Id.* Initially, the defendant threatened to sue two water association workers who were exposing and excavating a water line near his home. *Id.* The defendant, then, visited two water association members and informed them that he would sue them if the defendant's water was turned off. *Id.*

This Court, in *Wheaton, supra,* found that all of these people had some control over whether the defendant's water service would be terminated. *Id.* at 628. This Court reasoned that the defendant's interest and efforts in maintaining basic services to his home are a legitimate purpose. *Id.* Based upon the evidence, this Court found that the defendant's comments were made to retain his water service without having the specific intent to harass. *Id.* at 629. This Court commented that although the defendant may have been negligent or irresponsible in his conduct, it was insufficient to support a harassment conviction. *Id.*

There are several reasons why *Wheaton, supra* is distinguishable from the facts in this matter, and therefore, is not applicable. First, the defendant, in *Wheaton, supra,* was charged and convicted under a different section of the Harassment statute than Mr. Dougba. Second, the defendant, in *Wheaton, supra,* made repeated statements of his intention to sue people who had control over his water service, which is why this Court found that he had a legitimate purpose for his actions. In this matter, Section 2709(a)(2) does not contain any language about the defendant not having a legitimate purpose to act.

Third, the defendant's actions in *Wheaton, supra* and Mr. Dougba's actions are distinct in nature. This Court found that the evidence, in *Wheaton, supra,* did not support a finding that the defendant's actions were made with the intent to harass the water association members. Rather, it showed the defendant's intent to keep his

7

water service. In this matter, the Record was sufficient to find that Mr. Dougba's actions showed the intent to harass to Ms. ████ by continuing to beep his horn at her and motioning to her while she quickly got away from him. Ms. ████ credibly testified that she saw Mr. Dougba move inside the truck indicating that he was going to stop to get out and grab her. While running home, Ms. ████ saw Mr. Dougba drive by her home. After meeting with the police, Ms. ████ again saw Mr. Dougba. Despite her negative reactions, Mr. Dougba continued to follow Ms. ████, and therefore, the evidence supported that he intended to annoy or alarm her. The Record supported the Trial Court finding Mr. Dougba guilty beyond a reasonable doubt of Harassment. Therefore, this appeal is without merit.

## Conclusion

For the aforementioned reasons, the Trial Court respectfully requests that its decision be **AFFIRMED.**

**BY THE COURT:**

**KATHRYNANN W. DURHAM, J.**

FILED
2016 AUG 18 AM 9: 31
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA