J-S07039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES ZVONEK | : | |
| | : | |
| Appellant | : | No. 1514 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 8, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-MD-0000382-2018

BEFORE: OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:     **FILED: MARCH 25, 2019**

Appellant, Charles Zvonek (Zvonek), appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County imposed following his conviction for indirect criminal contempt of a Protection from Abuse (PFA) order. He argues that the trial court erred because the Commonwealth failed to carry its burden of proving that his conduct amounted to a pattern of harassing behavior in violation of the PFA Order. We agree and reverse.

**I.**

Debra Barthold (the Protected Party) first obtained a PFA order against Zvonek in November 2017. The PFA order was extended several times and modified in May 2018 to prohibit him from contacting the Protected Party or physically appearing at her home that they both had once shared.

_____

\*   Retired Senior Judge assigned to the Superior Court.

On June 20, 2018, Zvonek pled guilty to two counts of indirect criminal contempt as to the order then in effect. In one of those two incidents, it was alleged that Zvonek had come to the Protected Party's home in order to remove his name from the water utility account resulting in the water being temporarily shut off. The PFA order now at issue was entered on the date of the plea to that offense.

The PFA order prohibited Zvonek from having "any contact" with the Protected Party through "any means," including indirect contact through "third persons." The PFA order did not impose any financial obligations. It was also silent as to the means by which Zvonek could end his financial support of the Protected Party.

On June 29, 2018, the instant petition of indirect criminal contempt was filed. The Protected Party averred in her affidavit that Zvonek had contacted the gas utility company to cut off service to her home resulting in a temporary shut-off. The affidavit of probable cause was in large part based on Zvonek "knowing from the previous case that all matters regarding [the residence] had to be approved by his attorney and [Deputy District Attorney Gene Riccardo.]" Reproduced Record, at 12. It was undisputed that Zvonek resided with a new girlfriend across the street from the home of the Protected Party.

At the contempt hearing, the Commonwealth argued that Zvonek's most recent attempt to shut off a utility fit into a pattern of harassing conduct which violated the PFA order. The Commonwealth recounted a string of earlier

- 2 -

incidents, including Zvonek riding a lawn mower up and down the road near the Protected Party's home; being charged with resisting arrest and disorderly conduct upon his arrest for a prior violation of a PFA order; and putting the Protected Party in a state of constant fear. The Commonwealth emphasized that Zvonek had been warned by the trial court at an earlier but unspecified date that cutting off another utility would constitute a violation of the PFA order. The Protected Party did not testify.

Zvonek admitted that he took the gas utility out of his name. He argued that he had no obligation to continue paying for the utility and, unlike the previous incident concerning the water utility, he did not appear at the residence in person. His attorney disputed that the PFA order required Zvonek to follow any set procedure for ceasing his payment for utilities at the Protected Party's home.

The trial court found Zvonek in indirect criminal contempt of the subject PFA order and sentenced him to a range of 30 days to six months in prison. The trial court found that Zvonek's pattern of conduct evidenced an intent to "harass" the Protected Party. Opinion, at p. 5. The trial court explained that Zvonek knew the PFA order prohibited his conduct because he was told that "the mere act of attempting to shut off the utilities at the . . . residence was a violation[.]" Opinion, at p. 4. The trial court stressed that Zvonek's prior guilty plea to an "identical" charge concerning the water utility amounted to a

concession that he knew the PFA order precluded him from turning off the gas utility.

In his Concise Statement of Errors Complained of on Appeal, Zvonek asserted several grounds, which are restated as follows:

(a) Zvonek had no direct or indirect contact with the Protected Party;

(b) The PFA Order was silent as to Zvonek's financial obligation to pay the utility bills of the Protected Party, or to notify the Protected Party that his payment of her utility bills would cease; and

(c) The Commonwealth failed to carry its burden of proving beyond a reasonable doubt that Zvonek acted with wrongful intent, a necessary element of indirect criminal contempt.[1]

**II.**

In this case, the Commonwealth had the burden of proving all four elements of criminal contempt of a PFA order. The elements are as follows: 1) the order was sufficiently definite, clear, and specific so as leave no doubt of the prohibited conduct; 2) the person against whom the order is directed had notice of the order; 3) the act constituting the violation was volitional; and 4) there was "**wrongful intent**" to engage in the acts constituting the

---

[1] Zvonek preserved for appeal his asserted error regarding the sufficiency of the evidence. In his Concise Statement of Errors, he claimed that the Commonwealth had failed to prove beyond a reasonable doubt that he acted with "wrongful intent." The trial court's opinion discusses this "intent" element in the context of "harassment," which is a material term used in the PFA order at hand but not an express element of criminal contempt. For the purposes of preservation in this case, the two terms are interchangeable, as they both concern Zvonek's mental state at the time of the subject conduct.

violation. *See Shaner v. Harriman*, 189 A.3d 1088, 1090 (Pa. 2018) (emphasis added).

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *Ferri v. Ferri*, 854 A.2d 600, 602 (Pa. Super. 2004). "When a challenge to the sufficiency of the evidence is made, our task is to determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the factfinder to find every element of the crime charged beyond a reasonable doubt." *Commonwealth v. Battaglia*, 725 A.2d 192, 193 (Pa. Super. 1999).

The sufficiency of evidence as to the final element, "wrongful intent," is dispositive in this appeal. The element "can be imputed by virtue of the substantial certainty that [a course of conduct would be] in violation of the PFA Order." *Commonwealth v. Brumbaugh,* 932 A.2d 108, 111 (Pa. Super. 2007).

The subject of a PFA order does not expressly forbid "wrongful intent." It instead directed Zvonek not to "abuse, stalk, **harass**, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury" to the Protected Party. Reproduced Record, at 8 (emphasis added). The PFA order incorporates by reference the definition of "harassment" as set forth in Section 2709(a)(3) of the Pennsylvania Criminal Code. The statute provides in part that a person acts "**with intent to harass**, annoy or alarm another" when the person engages "**in a course of conduct** or repeatedly commits

acts **which serve no legitimate purpose**." 18 Pa.C.S.A. § 2709(a)(3) (emphasis added).

"[B]ecause 'course of conduct' means a pattern of actions composed of more than one act over a period of time evidencing a continuity of conduct, a single act will not support a conviction." ***Battaglia***, 725 A.2d at 194 (citing 18 Pa.C.S. § 2709(f); ***Commonwealth v. Sewell***, 702 A.2d 570, 572 (Pa. Super. 1997)). The exercise of a legal right serves a "legitimate purpose" under Section 2709(a)(3) unless there is proof of "unarguably reprehensible instances of intentional imposition on another." ***Commonwealth v. Wheaton***, 598 A.2d 1017, 1019 (Pa. Super. 1991).

## III.

If all of the background information recounted to the trial court was supported by the record, then such evidence would be sufficient to prove every element of criminal contempt, including wrongful intent (or intent to harass through a course of conduct). It would show that Zvonek knew his conduct was prohibited and that he intended to disturb the Protected Party rather than simply cease utility payments. We are nevertheless compelled to reverse the trial court's finding of guilt because the evidence necessary to affirm the judgment of sentence is not before us.

The Commonwealth, in its brief, and the trial court, in its opinion, refer to a judicial warning to Zvonek that cutting off utilities would constitute a violation of the PFA order unless notice was first given to the Deputy District

Attorney and the Protected Party. Neither the Commonwealth nor the trial court specified the precise content of the judicial warning or when it was given. The record on appeal does not contain a transcript of a hearing at which Zvonek received such instructions, and Zvonek correctly notes on appeal that the vague references to this hearing are not competent evidence. As a result, we may not consider Zvonek's receipt of a judicial warning as proof of his intent to commit an act prohibited by the PFA order.

The record is likewise silent as to several other incidents involving Zvonek's presence near the Protected Party's home. On appeal and at the contempt hearing, the Commonwealth enumerated a series of interactions between Zvonek and the Protected Party which flesh out an alleged pattern of harassment, as well as Zvonek's intent to harass. The absence of record evidence regarding the above-referenced incidents precludes us from taking those circumstances into account.

Finally, the trial court ruled that Zvonek's wrongful intent in this case could be inferred because he previously pled guilty to appearing at the Protected Party's home in order to turn off the water utility. This previous episode is not, as the trial court repeatedly stated, "identical" to the present case. Zvonek's physical presence at the home was an independent basis for a violation of the PFA order then in effect, regardless of his attempt to turn off the water utility. His plea to the violation does not prove he had knowledge

that merely calling the utility company was also prohibited. There is no record evidence to that effect.

The only facts for us to consider are that Zvonek once violated a PFA order through his physical presence and that he then sought to cease paying for a gas utility he had no legal obligation to make. These two incidents do not form a pattern of harassing conduct nor constitute proof of multiple acts, done with a non-legitimate purpose, from which a wrongful intent may be inferred. ***See generally Battaglia***, 725 A.2d at 194-95 (vacating harassment conviction because evidence was insufficient to show that defendant acted with a specific intent to harass or that his conduct was non-legitimate).

Because the Commonwealth presented insufficient evidence that Zvonek acted with the requisite intent, the trial court erred in finding Zvonek in violation of the PFA order.[2]

Conviction reversed. Zvonek is discharged.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/25/2019

---

[2] The disposition of this case on sufficiency grounds makes it unnecessary for us to address the remaining issues which Zvonek raises on appeal.